No. 2849.—R. P. SMITH *v.* THE CITY OF NEW ORLEANS.

The notes issued by the city of New Orleans, known as city treasury notes, which, on their face, were made receivable for all debts and demands due the city, are not bills of credit within the meaning and intendment of section ten of article one of the Constitution of the United States.

The act of the General Assembly of 1869, authorizing the funding of these notes in interest bearing bonds of the city, was a ratification by the State which legalized their issue by the city. Therefore, any holder of such notes is entitled to recover the amount from the city, with legal interest, from judicial demand

The prohibition contained in article one, section ten, of the Constitution of the United States, against the States emitting bills of credit, does not extend by implication to a municipal corporation of a State. The State, although prohibited from emitting bills of credit herself, may authorize a private or public corporation, within her borders and under her control, to do so. In the exercise of this prerogative by the State, there is no difference between the authorization granted to a private and a public or political corporation.

APPEAL from the Sixth District Court, parish of Orleans. *Cooley,* J. *Alexander Walker* and *James Lingan,* for plaintiff and appellee. *J. R. Beckwith,* City Attorney, for appellant.

TALIAFERRO, J. ·The plaintiff institutes this suit upon twenty-six written or printed instruments, each purporting to be an obligation of the city of New Orleans to pay the bearer a sum of money. Twenty-five of these are for the sum of twenty dollars each, and one for the sum of ten dollars, making in the whole, five hundred and ten dollars, and are of that class of paper currency, known as "city money." On each of these instruments or bills is the following endorsement:

"This note is issued in exchange for notes of the city of New Orleans, of smaller denominations, under and by virtue of ordinance No. 6250, approved October 12, 1864, and is receivable for all debts due the city of New Orleans, and for the redemption of the same the real estate of the city is pledged." The plaintiff claims interest also on the aforesaid sum from the first day of January, 1869.

The answer of the defendant repudiates, on several grounds, the instruments sued upon, and denies any indebtedness to the plaintiff. It declares that the supposed writings obligatory were not executed by the defendant; that no agent of the defendant now or heretofore ever had the power or right to execute them; and, if signed at any time by the persons whose names are affixed to them, such signing was unauthorized; that the defendant is itself without power or legal right to issue the instruments in question, and, *a fortiori,* could not delegate such right to its officers or agents; that these supposed obligations are in form bills of credit, and null and void by section ten of the first article of the Constitution of the United States, which declares, among the enumerated powers withheld from the States, that no State shall coin money or emit bills of credit. The answer denies that defendant has been put *in mora* by a demand of payment previous to the institution of this suit. The plaintiff had judgment

for the amount claimed, with legal interest from the first of January, 1869. The defendant has appealed.

As to the authority of the city to issue the bills in question, we find that the Legislature of the State, by an act approved twenty-seventh February, 1869, entitled "An act to enable the city of New Orleans to fund its floating debt, and to liquidate its indebtedness," authorized the city to issue bonds, to the amount of three million dollars, to be " given in exchange at par for what is known as city notes." If the corporation had not been empowered by the legislative enactment to issue these city notes prior to the date of their issuance, we think this law of twenty-seventh February, 1869, ratified the act

The principal inquiry in this case is, are the instruments on which this action is founded, bills of credit, within the meaning and intendment of section ten of the first article of the Constitution of the United States, and therefore null and void?

A recognized definition of bills of credit, as the term is used in the Constitution of the United States, is thus given: "To constitute a bill of credit within the Constitution, it must be issued by a State, on the faith of the State, and be designed to circulate as money. It must be a paper which circulates on the credit of the State, and is so received and used in the ordinary business of life." 11 Peter's Reports, page 426. The instruments or bills in question were not issued by the State, nor on the faith of the State, nor did they circulate on the credit of the State. They would seem, therefore, not to fulfill the conditions necessary to give them the character of bills of credit within the intendment of the Constitution. We imagine it is well settled that the Constitution does not prohibit private persons, or private partnerships, or private corporations, from issuing bills of credit. In the language of Judge Story, the Constitution does not prohibit the emission of all bills of credit, but only the emission of bills of credit by a State. The right to emit bills of credit is conceded to private corporations because under proper regulations and restrictions, which State Legislatures have always the power to impose, the exercise of the right may be useful in facilitating the business affairs of the community, and can never be productive of permanent or very serious injury. The States are the guards over the safety of the people against the perpetration of fraud by persons or corporations they invest with this power. But on the subject of currency a very grave question presented itself to the framers of the Constitution. The sad experience of the American people during the Colonial Government, and shortly after, justified them in appealing in the most earnest manner for protection against the unlimited power possessed by the States over the essential matter of the currency; a power fraught with dangers of the most frightful character, and from the injudicious exer-

cise of which ruin had spread over the land. It was seen by the convention, that, while the States were competent within their separate spheres to exercise a salutary control over the issue of bills of credit by corporations created by them, still the States themselves should be restrained in this respect from abuses which, it was fair to conclude, they would prevent the practice of by others. Hence it is by the organic law, that the States may, within circumscribed limits, authorize the issuing of bills of credit, while it is incompetent for them to exercise that power in their own names and on their own credit.

But it is urged by the counsel of the defendant, that the city of New Orleans is a public corporation, holding territorial jurisdiction over a portion of the territory of the State of Louisiana, and is an integral part of the State; that it is vested by the State with a portion of its sovereignty, and that it is by virtue of this derived sovereignty, that this public political corporation issued the bills of credit, for the payment of which it is now sued; that, the issuing of these bills of credit being the exercise of sovereign power derived from the State, the act is null and void for the reason, that the State, being forbidden to do the act, can not delegate the power to the corporation, on the principle that no one can delegate greater powers than he possesses. It is not easy to perceive a distinction in this respect between public and private corporations. If corporations of limited powers can exercise a right prohibited to the States, why may not public corporations exercise the same right when authorized by the acts incorporating them? Instances in which the power is granted to public corporations to issue bills of credit, are frequent, and the legality of their exercise of the power seems not to be questioned. In a case decided by the Supreme Court of New York, 39 Barbour 522, it was laid down that "A municipal corporation, having a power to purchase, has an implied power to incur an indebtedness for the purchase money and to provide for the payment of the indebtedness, unless that power is so restricted as that it can not be exercised, unless there be sufficient funds in hand to pay for the property. When no such restriction exists, it may purchase on credit and may issue its obligations to pay the indebtedness at a future time, and make subsequent provision for the payment of them."

The Supreme Court of the United States, in the case of Moran v. Commissioners of Miami County, 2 Black's Reports, 722, said: "The object of this court has been, in cases of a like kind, and it is still its purpose, to give to the contracts of counties, for the purchase of railroad stocks, and for borrowing money to aid in the construction of railroads and other internal improvements, a strict interpretation of the legislative acts, empowering them to do one or the other, but at the same time to give protection to the *bona fide* holders of such contracts as have been put on sale in the money market, by corporations or by

counties, acting separately, against their efforts to be relieved from the responsibilities of official acts in putting such papers into circulation for capitalists to invest money in them on assurances that the principal and interest would be paid."

In the case of Zabriskie v. Cleveland, Columbus and Cincinnati Railroad Company, 23 Howard, the same court said: "Corporations are as strongly bound, as individuals are, to a careful adherence to truth in their dealings with mankind, and that they can not, by their representations or silence, involve others in onerous engagements, and then defeat the calculations and claims their own conduct had superinduced."

Also, 21 Howard, 539, 24 Howard, 287, with regard to the putting in delay, the plaintiff insists that it was dispensed with by the public ordinance of the city, of the twenty-eighth December, 1868, which directed its Treasurer and Tax Collectors to receive in payment of taxes, licenses or any other duty no other than United States currency. The ordinance further directed the destruction by fire of all the bills known as "city money," then in its treasury. *Non constat* from anything in the ordinance, that the bills sued upon may not have been paid, had payment been demanded. We think, therefore, the defendant was not put in delay.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court, so far as it decrees interest from the first of January, 1869, be annulled and reversed. It is ordered that the plaintiff recover from the defendant the sum of five hundred and ten dollars, with legal interest, from judicial demand and costs of suit

Rehearing refused.